**MADAR LAW CORPORATION**
Alex S. Madar, Esq. (319745)
alex@madarlaw.net
14410 Via Venezia #1404,
San Diego, CA 92129-1666
Telephone: (858) 299-5879
Facsimile: (619) 354-7281

Attorneys for Plaintiff,
Thane Charman

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE CHARMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GG HOMES, INC.,<br><br>Defendant. | Case No.: **'20CV1298 JLS  WVG**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELEIF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ*.**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), in response to complaints about certain telemarketing practices.

2. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

**CLASS ACTION COMPLAINT**

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

3. The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, automated calls and text messages are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls. The FCC has also acknowledged that wireless customers are charged for any incoming calls and text messages.

4. Plaintiff THANE CHARMAN, ("Mr. Charman," or "Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant GG HOMES, INC. ("GG Homes" or "Defendant") in negligently and/or intentionally contacting Plaintiff on his cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs,

successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C § 227(b).

8. Personal jurisdiction and venue are proper pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Plaintiff resides within this judicial district; (2) the conduct complained of herein occurred within this judicial district; and (3) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone by automated marketing text message, which occurred while Plaintiff was physically located in the County of San Diego, State of California, pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

9. Plaintiff is an individual residing in the County of San Diego, State of California, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Upon information and belief, Plaintiff alleges that Defendant is a corporation whose state of incorporation and its principal place of business is in California.

11. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

12. Upon information and belief, GG Homes is a real estate acquisition company which seeks to "flip" houses in the San Diego and Southern California area.

13. Plaintiff alleges that at all times relevant herein, Defendant conducted business in the State of California, in the County of San Diego, and within this judicial district.

# FACTUAL ALLEGATIONS

14. Upon information and belief, GG Homes has a practice of sending unsolicited, automated text messages to individuals and real estate professionals to solicit their services as professional homebuyers.

15. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (619) ***-1119 (the "1119 Number"). The 1119 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

16. On or about May 26, 2017, Defendant sent a marketing text message to the 1119 Number, from (858) 707-7601, without Plaintiff's prior express written consent.

17. The text message read:

> Hi! I'm a contractor looking to buy a "fixer" property in San Diego. I have $850k cash. Do you know of any off-market or pocket listings not yet on MLS? - Eric

18. On or about August 3, 2017, Defendant sent a marketing text message to the 1119 Number, again from (858) 707-7601, without Plaintiff's prior express written consent.

19. The text message read:

> Just wanted to follow up with you this month and see if you knew of any off-market deals or pocket listings not yet on MLS? I've got $850k cash. Looking for a fix and flip opportunity. You can double end. - Eric

20. On or about October 18, 2017, Defendant sent another marketing text message to the 1119 Number, again from (858) 707-7601, without Plaintiff's prior express written consent.

21. The text message read:

> Hi! I'm a contractor looking for "fixers" in San Diego County. I have $850k cash. Do you know of any off-market deals or pocket listings you can show me? - Eric

22. After receiving these unsolicited and unwanted text messages, Plaintiff called (858) 707-7601 requesting to be removed from their text marketing list, and spoke to "Eric", who confirmed he was an employee of GG Homes.

23. Upon information and belief, these generic and impersonal text messages were sent to numerous individuals as part of GG Homes' marketing efforts for commercial purposes.

24. The text messages sent by Defendant to the 1119 Number contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

25. Plaintiff has not done any prior business with GG Homes.

26. Because Plaintiff is alerted when a text message is received to Plaintiff's cellular device, the unsolicited text messages that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy, and distracted and annoyed Plaintiff upon receipt.

27. Upon information and belief, Defendant sent the aforementioned text messages to Plaintiff's cellular telephone using a phone number used by Defendants for operating Defendant's text message marketing program.

28. Upon information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text messages *en masse* to thousands of customers' cellular telephones nationwide.

29. Upon information and belief, the automated text messaging system used by Defendant to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

30. Upon information and belief, the automated text messaging system has the capacity to, and does, automatically send text messages to stored telephone numbers, without human intervention.

31. The text messages at issue sent by Defendant to the 1119 Number on May 26, 2017, August 3, 2017, and October 18, 2017 constituted "advertisements" and/ or "telemarketing" as prohibited by the TCPA, as Defendant sent the text messages to Plaintiff in order to advertise its services.

32. Defendant's telephonic communications to Plaintiff were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

33. Plaintiff never provided "prior express written consent' or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant to transmit text messages to the 1119 Number by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

34. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

35. Plaintiff was personally affected by Defendant's aforementioned conduct because Plaintiff was frustrated and distressed that Defendant annoyed Plaintiff with an unwanted marketing text message, without Plaintiff's consent.

36. The text messages from Defendant, or its agent(s), violated 47 U.S.C. § 227(b)(1)(A)(iii).

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

38. Plaintiff represents, and is a member of, the Class, pursuant to Fed. R. Civ. P. 23(b) and 23(b)(3), which is defined as follows:

> All persons within the United States who were sent any text message by Defendant, or it employee, agent, affiliate, or subsidiary, for marketing purposes, using the

same or substantially similar text messaging system used to send a text message to Plaintiff, without express written consent, within the four years prior to the filing of the Complaint to the date of class certification.

39. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

40. Plaintiff reserves the right to redefine the Class, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

41. The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records to determine the size of the Class and to determine the identities of individual Class members.

**Numerosity**

42. The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited text messages *en masse* to thousands of customers' cellular telephones nationwide during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

43. There are questions of law and fact common to the Class that

predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

a) Whether within the four years prior to the filing of this Complaint to the date of class certification, Defendant or affiliates, subsidiaries, or agents of Defendant sent any text messages without the prior express written consent of Plaintiff and Class members using an "automatic telephone dialing system";

b) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d) Whether the complained of conduct was knowing or willful;

e) Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and,

f) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

**Typicality**

44. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members' as demonstrated herein.

45. Plaintiff represents and is a Class member of the Class because Plaintiff received at least one marketing text message through the use of an

automatic telephone dialing system, without providing prior express written consent to the Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members Plaintiff seeks to represent.

46. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

### **Adequacy**

47. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class member. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

### **Predominance**

48. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

50. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous Class members who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

51. The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party Class members to protect their interests.

52. The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendant.

53. Defendant has acted or refused to act in ways generally applicable to the Class, thereby making appropriate final and injunctive relief or corresponding

declaratory relief with regard to members of the Class as a whole.  Likewise, Defendant's conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

54. The Class may also be certified because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

55. This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

**FIRST CAUSE OF ACTION**

**NEGLIGENT VIOLATIONS OF THE TCPA**

**47 U.S.C. § 227 ET SEQ.**

56. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

57. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

58. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

59. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

## SECOND CAUSE OF ACTION
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
## 47 U.S.C. § 227 ET SEQ.

60. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

61. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

62. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

63. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and all Class members are also entitled to, and do seek, an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

- An order certifying the Class and appointing Plaintiff the representative of the Class, and appointing counsel for Plaintiff as Class Counsel;
- An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);
- An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);
- Pre-judgment and post-judgment interest;
- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);
- An order declaring that Defendant's actions alleged above violate the TCPA;
- Costs of suit;
- An award of reasonable attorneys' fees, pursuant to, *inter alia*, the common fund doctrine;
- Any other further relief that the court may deem just and proper.

/./././

/././/

# JURY DEMAND

64. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: July 9, 2020

Respectfully submitted,

**MADAR LAW CORPORATION**

By: s/Alex S. Madar
      ALEX S. MADAR, ESQ.
      alex@madarlaw.net
      ATTORNEY FOR PLAINTIFF